**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GREG M. BOGACZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 3070** |
| | ) | |
| **LT. HOLMES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Plaintiff Greg Bogacz is serving a sentence in the Illinois Department of
Corrections. Before IDOC, Mr. Bogacz was detained at the Cook County Jail awaiting
trial. He has filed a *pro se* lawsuit[1] under 42 U.S.C. § 1983 that currently has a single
named defendant, Lt. Holmes, whose first name Mr. Bogacz does not know and that
defense counsel, for some reason, has not provided. Mr. Bogacz contends that while at
the Jail, he had multiple ingrown toenails that were causing him significant pain.
Unsurprisingly, he says that he needed to keep his toenails trimmed and that a Jail
physician told him as much. The Jail apparently would not allow detained persons to
keep nail clippers, likely (though the defense doesn't actually say this) because they can
be used or modified for use as a weapon. So, according to Mr. Bogacz, a detained

---

[1] Back in November 2022, at a very early stage of the lawsuit, Mr. Bogacz filed a motion
for attorney representation. The Court denied the motion in December 2022, finding
that Mr. Bogacz had not shown that counsel was required, at least not at that early
stage. *See* Dkt. no. 19. The Court's order advised Mr. Bogacz that he could renew the
motion as the case progressed, but Mr. Bogacz did not do so.

person who needed nail clippers had to go to the Jail's barbershop, where clippers evidently were kept, or have correctional staff bring nail clippers from the barbershop to the person's cell for use.

Mr. Bogacz's lawsuit against Lt. Holmes appears, on the surface at least, to involve the period from January through July 2020, *see* Pl.'s Resp. to Def.'s Mem. at 3, a good part of which coincides with the early stage of the COVID-19 pandemic, which led to a lockdown of the Jail in or about March 2020. According to Mr. Bogacz, the Jail's barbershop was closed during the January-to-July period. During most or at least a good part of this period, Mr. Bogacz was incarcerated at Division 6 of the Jail, and Lt. Holmes worked there as well. Mr. Bogacz says that he asked Lt. Holmes to provide or to arrange to provide him with nail clippers to deal with his ingrown toenails, but Lt. Holmes would not or did not do so. It was not until the very end of July 2020, Mr. Bogacz says, that he finally was able to clip his toenails. Before this, he contends, he experienced significant pain.

Mr. Bogacz has sued Lt. Holmes under 42 U.S.C. § 1983 for preventing him from adequately caring for his medical condition. Mr. Bogacz acknowledges that Lt. Holmes is not a physician, but he contends that Lt. Holmes had the ability to do something to ameliorate the situation but refused. Mr. Bogacz has sued to recover damages. His lawsuit appears to name Lt. Holmes individually and in his "official capacity," a point to which the Court will return later in this decision.

Because Mr. Bogacz was, at the time, detained while awaiting trial, his claim against Lt. Holmes arises under the Fourteenth Amendment's Due Process Clause. To prevail, Mr. Bogacz must establish that: (1) Lt. Holmes knowingly, or at least recklessly,

2

failed to provide him with nail clippers; (2) Lt. Holmes's action, or inaction, was unreasonable; and (3) Mr. Bogacz would have avoided harm, or would have been harmed less, if Lt. Holmes had acted reasonably. *See, e.g., Redman v. Downs*, 854 F. Appx 736, 738 (7th Cir. 2021); *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018); *Miranda v. County of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018). *See generally Kemp v. Fulton County*, 27 F.4th 491, 496 (7th Cir. 2022) (knowledge requirement for Fourteenth Amendment claim concerns knowing conduct, not knowledge of the consequences of that conduct).

Lt. Holmes has moved for summary judgment. He argues that: (1) all he did was respond to a grievance submitted by Mr. Bogacz, and that's insufficient to make him responsible for Mr. Bogacz's alleged harm; (2) he did what he was able to do, primarily by referring Mr. Bogacz to the "facilities supply" of nail clippers; (3) there is no basis for an official capacity claim, which amounts to a claim against the entity employing Lt. Holmes, namely the Sheriff of Cook County; (4) Mr. Bogacz does not claim a physical injury, as supposedly required under the Prison Litigation Reform Act to maintain a claim; and (5) Lt. Holmes is entitled to summary judgment based on qualified immunity. Only the third of these arguments has merit.

Before getting to the merits, the Court addresses certain procedural or evidentiary points asserted by Lt. Holmes in his reply to Mr. Bogacz's response. First, Lt. Holmes asks the Court to strike Mr. Bogacz's affidavit, submitted with his response, on the ground that it adds more information than Mr. Bogacz provided in his deposition. This argument is utterly lacking in merit. Lt. Holmes attempts to rely on the well-established proposition that a party cannot create a genuine factual dispute for

summary judgment purposes by contradicting his deposition with a later affidavit. *See, e.g., Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 (7th Cir. 2008). But Lt. Holmes does not cite any actual contradiction. Rather, he argues that Mr. Bogacz's affidavit contains information that, according to Lt. Holmes, Mr. Bogacz did not volunteer during his deposition. Lt. Holmes cites a broad question his counsel asked Mr. Bogacz at the end of the deposition: "Is there anything that you would like to put on the record for the last five minutes we have?" Lt. Holmes contends that because Mr. Bogacz makes points in his affidavit that he did not volunteer in response to this open-ended question, it's too late now.

No case cited by Lt. Holmes (and certainly no Seventh Circuit case) stretches the affidavit-contradicting-deposition rule anywhere near that far. The main case he cites, *Beckel v. Walmart Assocs., Inc.*, 301 F.3d 621 (7th Cir. 2002), involved a scenario nothing like the one here. In *Beckel*, the plaintiff asserted a claim that she had been fired for reporting sexual harassment by a supervisor. The plaintiff testified during her deposition about a meeting with the general manager of the distribution center where she worked. She recounted statements made at the meeting and then, when asked if she recalled anything else, said no. Evidently what she *had* remembered included no evidence suggesting retaliation. But seven months later, in response to a summary judgment motion, the plaintiff remembered a claimed statement by the general manager stating that her "employment would be terminated if [she] disclosed the incident." *Id.* at 623. In short, there was a flat-out contradiction on a critical point that went to the core of the plaintiff's case. And even then, the court relied in part on the plaintiff's attorney's failure to bring this out when *he* had an opportunity to question the plaintiff during her

deposition taken by the defendant.  *See id*. at 624.

Nothing like this happened here.  First, Mr. Bogacz does not have a lawyer—he's an imprisoned person acting *pro se*—and second, his recounting of details in his affidavit does not actually contradict his deposition answer to the vague question by defense counsel about whether there was "anything that [he] would like to put on the record."  Indeed, Lt. Holmes does not identify any actual contradiction of Mr. Bogacz's deposition testimony:  his general statements on this point cite none, and his laundry list of a dozen-plus paragraphs claimed, without explanation, to include contradictions, amounts to a forfeiture given the total absence of an explanation.

The Court, having carefully reviewed the relevant portions of Mr. Bogacz's deposition regarding his communications with Lt. Holmes and the nature of his ingrown toenail issue, and the corresponding portions of his affidavit, actually can see no contradiction at all.  There may be more detail in one spot than the other, but there's nothing about this that makes the affidavit inadmissible.  The Court overrules Lt. Holmes's argument on this point.

Second, Lt. Holmes argues that Mr. Bogacz's affidavit contains points on which he lacks personal knowledge.  Again, this argument is made in a conclusory way—it's basically a single, unexplained sentence that appears twice in Lt. Holmes's reply brief.  *See* Def.'s Reply at  4 (first paragraph and third paragraph).  Of the eight paragraphs of the affidavit cited on this point by Lt. Holmes, six involve matters that on their face *clearly* are matters within Mr. Bogacz's personal knowledge:  paragraph 27, concerns a conversation between Mr. Bogacz and Lt. Holmes; 28 concerns a medical request Mr. Bogacz himself submitted; 46 concerns his prior experience with nail clippers at the Jail;

47 involves what he had to do to cut his toenails; 48 says which Jail divisions he was

housed in and when; and 49 discusses his experience in Division 10 in July 2020. It's

rather mystifying to the Court on what basis Lt. Holmes contends these points are

outside Mr. Bogacz's knowledge. The defense reply brief would have benefitted from

more careful vetting on this point.

That brings us down to paragraphs 5 and 6 of Mr. Bogacz's affidavit, which read

as follows:

> 5. When the barbershop is closed for long periods of time the detainee and/or inmate cannot cut his nails.

> 6. In the past, when the barbershop is closed for long periods of time, sergeants and/or lieutenants, including Lt. Holmes, have gone into the barbershop to retrieve the toenail clippers so the detainee/inmate could use them.

Pl.'s Ex. A (affidavit) ¶¶ 5-6. On the question of personal knowledge, these statements

by Mr. Bogacz are arguably closer to the line. But that's only because they are not

detailed. It's readily apparent that Mr. Bogacz's statements in these paragraphs involve

matters that likely would be within his personal knowledge, either by experience or by

observation. In particular, Mr. Bogacz was detained at the Jail for several years before

the events in question, and he had recurring ingrown toenail issues during that period.

He has a sufficient basis to testify regarding his observations and experiences on this

point.

The summary judgment motion, in the Court's view, largely boils down to what

can appropriately be taken or inferred from paragraph 6 of Mr. Bogacz's affidavit. The

Court will consider Mr. Bogacz's statements in paragraph 6 for the reasons just stated

and will return to it at a later point in this decision.

6

Having addressed Lt. Holmes' procedural objections, the Court proceeds to his arguments regarding the merits, though in a slightly different order than how they are set out in his summary judgment brief.

**1.     Whether Lt. Holmes's liability is premised only on his grievance review**

Lt. Holmes argues that his only involvement was to review a grievance on the toenail clippers issue that Mr. Bogacz submitted.  But Mr. Bogacz says otherwise.  He testified during his deposition, and repeats in his affidavit, that he spoke directly with Lt. Holmes twice; asked him to facilitate getting toenail clippers both times; and Lt. Holmes refused.

Lt. Holmes's response to this seems to be that Mr. Bogacz's testimony should be disregarded and that the only evidence worthy of consideration is the written record of Lt. Holmes's review of the grievance.  *See* Def.'s Mem. in Support of Mot. for Summ. J. at 4 ("Defendant's only involvement *supported by record evidence* is responding to Plaintiff's grievance." (emphasis added)).  That's ridiculous.  First of all, there is no rule—none—that suggests that a court may, on summary judgment, appropriately discount testimonial evidence that isn't supported by documents.  Second, the fact that Lt. Holmes did review Mr. Bogacz's grievance doesn't mean—*of course* it doesn't mean—that he didn't also speak with Mr. Bogacz.

Mr. Bogacz testified during his deposition that he spoke with Lt. Holmes on two occasions during the relevant period, specifically, in May and June 2020.  *See* Def.'s Ex. F (Bogacz dep.) at 37, 61-62.  He isn't precise on the dates, other than to state that the May conversation likely was between May 5 and May 15.  But precision on the date of a conversation isn't required for testimony like this to be admissible and properly

considered.

The bottom line is that a reasonable jury could accept Mr. Bogacz's account that he directly asked Lt. Holmes to get, or help him get, toenail clippers and that Lt. Holmes refused to do so. The missing element at this point involves whether this was within Lt. Holmes' responsibilities or his power to accomplish. The Court will return to this point later in this decision. For now, it suffices to say that the Court rejects Lt. Holmes's contention that his claimed liability is based only on his response to Mr. Bogacz's grievance.

**2.     The claimed absence of physical injury to Mr. Bogacz**

The Court skips ahead to Lt. Holmes's third argument. Under the PLRA, no federal suit may be brought by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e). Lt. Holmes seeks dismissal of Mr. Bogacz's claim on this basis, arguing that he has claimed no physical harm. *See* Def.'s Mem. in Support of Mot. for Summ. J. at 12 ("[W]hen viewing no record of an injury, in conjunction with the record evidence that Defendant was not involved in Plaintiff's medical treatment, summary judgment is entirely appropriate here.").

First, this argument appears to misread the statute. Section 1997e(e) does not require a physical injury as a prerequisite to maintaining a claim. Rather, it requires a physical injury as a prerequisite to obtaining *damages for emotional distress.* That is clear from the text of the statute, and it's also clear from a recent Seventh Circuit case, which concludes this provision "applies only to compensatory damages—not nominal damages, punitive damages, or injunctive relief." *Hacker v. Dart*, 62 F.4th 1073, 1078

(7th Cir. 2023).[2] Thus even if Lt. Holmes were right about the absence of a physical injury, it would not warrant dismissal of Mr. Bogacz's claim but rather only denial of recovery of emotional distress damages if he prevailed.

Second, Mr. Bogacz *does* claim a physical injury. "To satisfy § 1997e(e), prisoners must show an injury that is more than negligible although not necessarily significant." *Id.* at 1079. Having two toenails that are growing into one's toes allegedly due to the failure to provide toenail clippers, thereby causing pain, amounts to a physical injury sufficient to clear this threshold. Mr. Bogacz described the physical component of his injury in detail during his deposition. *See* Def.'s Ex. F (Bogacz dep.) at 40, 106-07.

For these reasons, the Court overrules Lt. Holmes's second argument.

**3.     Lt. Holmes's personal responsibility for the alleged wrong to Mr. Bogacz**

Lt. Holmes contends that Mr. Bogacz has no evidence that he had any personal involvement in any violation of Mr. Bogacz's rights. The motion for summary judgment focuses mainly on his response to Mr. Bogacz's grievance—a point that, as just discussed, doesn't carry the day—but the issue is broader than that. In order to have acted unreasonably, or in order for his actions (or inaction) to have caused harm to Mr. Bogacz, there has to be some evidence that would permit a reasonable jury to find that there was something Lt. Holmes could have done that he knowingly refused to do.

In this case, Mr. Bogacz's contention is that Lt. Holmes he should have obtained

---

[2] Injunctive relief is inapplicable here; Mr. Bogacz is no longer at the Jail and thus does not face any risk of future harm at the Jail's hands. But under *Hacker*, nominal and punitive damages would still be available even if Mr. Bogacz could show no physical injury.

nail clippers and provided them for Mr. Bogacz's use. *See* Def.'s Ex. F (Bogacz dep.) at 36-37. Instead, Mr. Bogacz testified, Lt. Holmes said that Mr. Bogacz would have to ask for clippers from the medical dispensary, *see id.* at 37, 38-39, and said generally that "they're going to make [nail clippers] available for [detainees] in the near future." *Id.* at 37. That was also Lt. Holmes's response to Mr. Bogacz's grievance. *See* Def.'s Ex. E (grievance) at 2. Mr. Bogacz contends that this was basically the equivalent of a brush-off or the run-around; dispensary personnel, according to Mr. Bogacz, said that clippers had to be obtained not from them, but from Jail staff. *See* Pl.'s Ex. A (affidavit) ¶ 27.

For Mr. Bogacz to prevail at trial, there will have to be some evidence that providing nail clippers was something that Lt. Holmes had the ability or responsibility to do. It wouldn't make sense for a detained person in this situation to be able to impose liability on random correctional staff members, irrespective of their responsibilities. But the defense doesn't actually address this point in the summary judgment motion. Instead the defense contends—premised on its factually unsupported assumption that Lt. Holmes's only involvement concerned the grievance—that Lt. Holmes carried out whatever responsibility he had by referring Mr. Bogacz to the "facilities supply" of nail clippers. The Court has put that in quotes because it is the phrase the defense uses in its summary judgment brief. *See* Def.'s Mem. in Support of Mot. for Summ. J. at 6 ("Defendant's response gave Plaintiff a notice about the facilities supply.") (citing Def.'s LR Stat. ¶ 16, which in turn cites the grievance response). This is an easy one: *it's not even what Lt. Holmes said in his grievance response*. Lt. Holmes's June 1, 2020 response actually says: "This item [i.e., nail clippers] will be made available in the near future." Def.'s LR 56.1 Stat., Ex. D at 2. That's it; no reference to a "facilities supply" at

all.

The Court easily could stop right there, because it has addressed the only argument regarding Lt. Holmes's personal responsibility that the defense made on summary judgment. That argument was premised on non-existent evidence and thus could not succeed. But because the issue of Lt. Holmes's responsibility will come up at trial, the Court will go ahead and discuss it here.

During his deposition, when asked why Lt. Holmes should be held responsible, Mr. Bogacz mainly cited Lt. Holmes's title and his relative authority vis-à-vis other correctional personnel: "But him being in a position of power, him being above a regular CO, I believe he had the authority to go to the barber shop, because it was closed, and grab some toenail clippers. You know, they should have had a system in place." Def.'s Ex. F (Bogacz Dep.) at 36. Later during the deposition, Mr. Bogacz returned to this point:

> Q:    Isn't it true that Lieutenant Holmes didn't have anything do so with the medical treatment?
>
> A:    Lieutenant Holmes doesn't have anything to do with medical treatment, but he has an obligation to provide personal hygiene items for detainees.
>
> Q:    And why do you believe he has that obligation?
>
> A:    Because in the inmate handbook, it says that CCDOC will provide us with a healthy lifestyle, including personal hygiene items, such as razors and toenail clippers.

*Id.* at 108 (emphasis added). And a bit later during the deposition, Mr. Bogacz testified as follows:

> . . . [T]his has been an ongoing issue through my whole stay at Cook County Jail. All they had to do was figure out an alternate way to provide toenail clippers. If the barber shop was closed for whatever reason, they

11

need to find an alternate way to provide toenail clippers.

Lieutenant Holmes, being in a position of power, being a man who's in charge, who could make some rules, he could have helped in doing that. When I specifically asked him for toenail clippers and he denied me, he could have got them.  The issue could have been dead.  But he didn't.  He denied them.

*Id.* at 111-12.

This testimony would not be enough to permit a reasonable jury to find in Mr. Bogacz's favor regarding Lt. Holmes's responsibility.  The reason is that, on its face, the testimony is based on assumptions regarding Lt. Holmes's responsibility, not actual experience.  In paragraph 6 of his affidavit, however, Mr. Bogacz provides evidence that would support the proposition that Lt. Holmes did in fact had the ability and authority, when the barbershop was closed for an extended period, to provide a detained person access to nail clippers:

6.      In the past, when the barbershop is closed for long periods of time, sergeants and/or lieutenants, including Lt. Holmes, have gone into the barbershop to retrieve the toenail clippers so the detainee/inmate could use them.

Pl.'s Ex. A (affidavit) ¶ 6.

The Court found earlier that this statement, and its surrounding context, involve matters on which the record reflects Mr. Bogacz can appropriately testify based on his knowledge and observation at the Jail.  With this, he has offered enough evidence to permit a reasonable jury to find personal responsibility on the part of Lt. Holmes, though a jury easily could go the other way as well.  Specifically, a reasonable jury could find that Lt. Holmes acted unreasonably in refusing to provide Mr. Bogacz with access to toenail clippers and (in response to the grievance) just telling him the problem was being worked on.  There is evidence that Mr. Bogacz got access to toenail clippers in

July 2020, but a reasonable jury could find that a two-month delay (the approximate interval between his first approach to Lt. Holmes in May 2020 and his access to clippers in July 2020) was unreasonable.

**4.    Qualified immunity**

Lt. Holmes's argument for qualified immunity turns on the following contentions: (1) all he did was respond was respond to Mr. Bogacz's grievance; (2) he never dealt directly with Mr. Bogacz; (3) he is not a medical provider and did not provide medical treatment; (4) Mr. Bogacz "never received a medical alert for any accommodation regarding his toenails"; and (5) Mr. Bogacz never told Mr. Holmes about his diagnosis or treatment.  Def.'s Summ. J. Mem. at 13.

The first two of these arguments, and the fifth, turn on facts that are disputed.  As the Court has noted, the defense has offered no affidavit from Lt. Holmes.  As a result, the proposition that he "only responded to Plaintiff's grievance and never dealt directly with . . . Plaintiff, in general," *id.*, has not a speck of support in the record.  As discussed earlier, evidence that Lt. Holmes responded to Mr. Bogacz's grievance does not amount to evidence that that is *all* he did.  That aside, Mr. Bogacz testified during his deposition and has stated in his affidavit that he spoke directly with Lt. Holmes, twice, regarding his toenail pain and his need and request for nail clippers.  Qualified immunity is not a basis for summary judgment when the defense turns on disputed facts.  *See, e.g., Gupta v. Melloh*, 4 F.4th 990, 1000 (7th Cir. 2021) ("[W]here there are disputes of material fact  . . . that are essential to the question of [the legality of the defendant's conduct], . . . it is impossible to conclude on summary judgment whether [the defendant is] entitled to qualified immunity."); *Weinmann v. McClone*, 787 F.3d 444, 446 (7th Cir. 2015) (a

motion for summary judgment on qualified immunity "is not the time for resolution of disputed facts"; instead, the court must "accept the plaintiff's version of the facts, without vouching for their ultimate accuracy").

On Lt. Holmes's third point, the proposition that he is not a medical provider is of no consequence in this context. It appears, based on the record, that toenail clippers weren't considered a medical device at the Jail; under normal circumstances, they were provided by (or at least at) the Jail's barbershop. As the Court has discussed, Mr. Bogacz has provided evidence sufficient to permit a reasonable jury to find that procuring a set of clippers was within Lt. Holmes's authority and ability to accomplish. Applying qualified immunity based on the contrary proposition—which at this point has no support in the record given the way the defense pitched the summary judgment motion—would be inappropriate.

Finally, the Court confesses that it does not understand the import of Lt. Holmes's contention that "Plaintiff never received a medical alert for any accommodation regarding his toenails," Def.'s Summ. J. Mem. at 13, and the defense makes no effort to elucidate this. In any event, Lt. Holmes has cited no authority for the proposition that a "medical alert," whatever that might be at the Jail, is a necessary prerequisite to a claim of this type. That aside, Lt. Holmes himself cites evidence indicating that a physician assistant diagnosed Mr. Bogacz in March 2020—right in the middle of the period at issue—as having "bilateral ingrown toenails." *See* Def.'s LR 56.1 Stat. ¶ 28.

Given the disputed facts as well as the evidence that would permit a reasonable jury to find that Lt. Holmes ignored Mr. Bogacz's claims of pain and refused to take what might rightly be considered to be a simple a modest step—procuring toenail clippers

because the barbershop was closed—Lt. Holmes is not entitled to summary judgment based on qualified immunity.

For all of these reasons, Lt. Holmes is not entitled to summary judgment on Mr. Bogacz's individual-capacity claim against him.

**5.     "Official capacity" claim**

Mr. Bogacz also appears to have sued Lt. Holmes in his official capacity.  An official capacity claim is "another way of pleading an action against an entity of which an officer is an agent."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Thus a lawsuit against an agent of an entity in the agent's official capacity is appropriately viewed as a suit against the entity itself—in this case, the Sheriff of Cook County, who employs Lt. Holmes and operates the Cook County Jail.  The Court notes that the Sheriff is not a named defendant but will bypass that issue because Mr. Bogacz has not offered a basis for imposing entity liability on the Sheriff in any event.

To establish liability against a governmental entity like the Sheriff under section 1983, the plaintiff must show that a policy or custom of the entity caused the plaintiff's constitutional injury.  *See, e.g., J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020). This can be shown through "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom of practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."  *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

The policy Mr. Bogacz contends caused his injury is the claimed Cook County Jail policy requiring pretrial detainees to use only nail clippers located in the barbershop.

15

That policy is quite obviously not unconstitutional on its face; it does not keep detained persons from access to nail clippers but simply regulates where they can be used. Mr. Bogacz says that as applied to him, the policy is unconstitutional, as the barbershop was closed for a significant period during the relevant time. But a written policy that is facially constitutional does not give rise to liability under section 1983, even if it does not provide guidance to employees that might avert individual constitutional violations. *Id.* at 618.

Mr. Bogacz's official capacity claim is thus better understood as a claim that there was a practice (during the relevant period) of not allowing detained persons access to nail clippers at all, or perhaps a claim that the policy consisted of the *absence* of a policy to address situations where the normal distribution channel was shut down, leaving no alternative means of access to nail clippers for detained persons. But Mr. Bogacz has offered no evidence of a wider practice, nor has he offered evidence that there was no alternative source generally. Rather, his evidence is that *he* could not get access to nail clippers. To put it another way, Mr. Bogacz points only to his own experience; he offers no evidence that anyone other than him who needed nail clippers was unable to get them. That is insufficient to permit a reasonable jury to find that the Sheriff had a policy or widespread practice of denying nail clippers during the relevant period. *See Est. of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017) ("A plaintiff must do more than simply rely upon his own experience to invoke *Monell* liability"); *Thomas v. Cook Cnty. Sherriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (stating that "an isolated act of an individual employee" is "insufficient to establish a widespread custom or practice."). For these reasons, Lt. Holmes is entitled to summary judgment on Mr.

Bogacz's official capacity claim.

## Conclusion

Mr. Bogacz's lawsuit is certainly not the case of the century.  But even so, the defendant cannot escape liability on summary judgment by making contentions without support in the record and waving away Mr. Bogacz's testimony and affidavit.  For the reasons stated above, the Court denies the defendant's motion for summary judgment [dkt. no. 53] with respect to the plaintiff's individual-capacity claim against the defendant but grants summary judgment with respect to the plaintiff's official-capacity claim.  The case is set for a telephonic status hearing on June 5, 2024 at 8:45 a.m. to set a trial date and discuss holding a settlement conference prior to trial.  The following call-in number will be used:  650-479-3207, access code 980-394-33.  Defense counsel is directed to make arrangements for the plaintiff to participate by telephone.

Date:  May 14, 2024

_____
MATTHEW F. KENNELLY
United States District Judge